UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 4:18-CR-00007 HEA/NAB |
| vs. ) | |
| ) | |
| DARION JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**MOTION TO RECONSIDER ORDER OF DETENTION
AND GRANT RELEASE PENDING SENTENCING**

COMES NOW Defendant Darion Johnson, by and through his counsel, Luke A. Baumstark of the Baumstark Firm, LLC, and, for his Motion to Reconsider Order of Detention and Grant Release Pending Sentencing, states:

**Introduction**

Defendant Johnson moves the Court for an Order granting him release pending sentencing. Currently detained at the Randolph County Jail, Defendant Johnson is among the group of people the Centers for Disease Control and Prevention ("CDC") has categorized as most-at-risk for contracting COVID-19, a dangerous illness spreading rapidly across the world and through the Eastern District of Missouri, and, in particular, the St. Louis Metropolitan Area.

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

During the period of release Defendant Johnson will reside with his father, David Johnson at 617 Iron Street, St. Louis, Missouri, 63111.

1

**Factual Background**

*Changed Circumstances: COVID-19 Outbreak*

As of May 5, 2020, the new strain of coronavirus which causes COVID-19, has infected over 3.5 million people, leading to at least 251,457 deaths worldwide.[1] On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.[2] Governor Michael Parsons declared a State of Emergency on March 13, 2020. Additional protective measures have been taken including "stay at home" orders being issued in both St. Louis County and in the City of St. Louis. As of May 5, 2020, there are 9,006 positive cases of COVID-19 in Missouri and at least 387 deaths.

The CDC has issued guidance that individuals at higher risk of contracting COVID-19—adults over 60 years old and people with chronic medical conditions—take immediate preventative actions, including avoiding crowded areas and staying home as much as possible.[3] With confirmed cases in Randolph County that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large.

*Conditions of Confinement and Spread of Coronavirus*

Conditions of confinement create the ideal environment for the transmission of contagious disease.[4] Inmates cycle in and out of detention facilities from all over the country, and people who work in the facilities including correctional officers, and care and service

---

[1] *Coronavirus Map: Tracking the Spread of the Outbreak*, The New York Times (March 26, 2020), *at* https://nyti.ms/2U4kmud (updating regularly).
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.
[3] *People at Risk for Serious Illness from COVID-19*, CDC (March 12, 2020) *at* https://bit.ly/2vgUt1P.
[4] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910.

2

providers leave and return daily, without screening.  Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited.[5]  Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.  According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[6]  Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[7]  In China, by late February, officials had already confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[8]  Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[9]  Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[10]  In the U.S. steps have been taken in some jurisdictions (including St. Louis County) to facilitate the release of

---

[5] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, *at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[6] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), *at* https://bit.ly/2W9V6oS.

[7] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) *at* https://bit.ly/2TNcNZY.

[8] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.

[9] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.

[10] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.

elderly and sick prisoners and to reduce jail populations by discouraging and/or refusing the admission of individuals arrested on non-violent misdemeanor charges.[11]

The Randolph County jail lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers and other care and service providers who enter the facility.  It also lacks the space to allow for adequate social distancing to protect the inmates housed there at any given time.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into the Randolph County Jail and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and unsafe sanitary conditions.

## The Bail Reform Act Requires Defendant Johnson's Release

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).

The circumstances that existed when Defendant Johnson was ordered detained have now changed.  There is a pandemic that poses a direct risk that is far greater if Defendant Johnson continues to be detained during this public health crisis.  Further, the Government has agreed to

---

[11] In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners (Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.); Cuyahoga County (Ohio) is holding mass pleas and bail hearings to reduce the current jail population (https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html); Mahoning County (Ohio) jail is refusing all non-violent misdemeanor arrestees (https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/); see also Collin County (TX) (https://www.dallasnews.com/news/public-health/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/);

4

dismiss the most serious charges against him (to wit: Counts 1, 2, 3, 4, 11, and 12 of the Indictment).

Defendant Johnson is vulnerable because of having suffered from a lung infection relating to exposure to mold during his previous incarceration at the Missouri Department of Corrections.  It is believed that COVID-19 burdens the heart as well as the lungs, rendering Defendant Johnson's past lung infection potentially of equal or greater concern.  Anna Medaris Miller, Holly Secon, Canela López, *10 common health conditions that may increase risk of death from the coronavirus, including diabetes and heart disease* (March 23, 2020) at https://news.yahoo.com/10-common-health-conditions-may-195100153.html.  Defendant Johnson knew about his past condition at the time of his detention hearing.  He did not, however, know that it would make him particularly vulnerable to a readily transmitted, potentially fatal (especially as to him) pandemic virus moving rapidly through the area.  The existence of the COVID-19 pandemic and Defendant Johnson's particular vulnerability to it are "information…that was not known to [him] at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure [his] appearance…as required and the safety of any other person and the community." 18 U.S.C. § 3142 (f)(2).

The courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge.  As Judge Weinstein held, "When we do punish, we do not act cruelly.  Continued incarceration of this terminally ill defendant threatens both of these fundamental characteristics of our democracy."  *United States v. Scarpa*, 815 F.Supp.88 (E.D.N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC").

5

This Court should consider the "total harm and benefits to prisoner and society" that continued imprisonment of Defendant Johnson will yield, relative to the heightened health risks posed to Defendant Johnson during this rapidly encroaching pandemic.  *See Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant); *United States v. Mateo*, 299 F. Supp. 2d 201, 212 (S.D.N.Y. 2004) (reducing sentence where defendant's pretrial conditions were "qualitatively more severe in kind and degree than the prospect of such experiences reasonably foreseeable in the ordinary case").

### **Conditions of Release Are Available That Allow Defendant Johnson To Be Treated Humanely While Also Ameliorating Any Danger To The Community**

From Defendant Johnson's perspective, his life—not only his liberty—is on the line, creating a powerful incentive to abide by any release conditions the Court may impose and changing the calculus that initially led to the denial of bail in this case.

If released, Defendant Johnson will stay with his father.  He is prepared to submit to conditions such as ankle-monitoring and/or home detention as deemed necessary by the Court.

The injured and ill pose a lower risk of violating supervision, particularly during a global pandemic during which even leaving the house will endanger their lives.

### **Conclusion**

Defendant Johnson is among the vulnerable population at heightened risk of getting very sick from this illness.  For all of the above reasons, Defendant Johnson should be granted release on bond pending sentencing.

WHEREFORE, Defendant Johnson requests that this Court reconsider and vacate its previous Order of Detention and grant him release pending sentencing, imposing such conditions as are deemed necessary by the Court.

Respectfully submitted,

/s/ *Luke A. Baumstark*
Luke A. Baumstark  #56344
THE BAUMSTARK FIRM, LLC
815 Geyer Avenue
St. Louis, MO  63104
(314) 492-6290
(314) 492-6348 FAX
luke@baumstarkfirm.com

***Attorney for Defendant***
***Darion Johnson***

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 6th day of May, 2020, this document was filed with the court via the CM/ECF system which will send notice to all parties of record.

/s/ *Luke A. Baumstark*